## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

UNITED STATES OF AMERICA

v.                                    No. 4:09CR00133 JLH

EDGAR KEATON MARTIN

## OPINION AND ORDER

Edgar Keaton Martin was convicted of possessing a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and was sentenced to 188 months imprisonment. His conviction was affirmed on direct appeal. *United States v. Martin*, 443 Fed. Appx. 814 (8th Cir. 2012). Martin has filed a motion and a supplemental motion to vacate or set aside his conviction.[1] He contends that his lawyer was ineffective, that the prosecutor committed misconduct, and that as a result he was deprived of a fair trial. For reasons that will be explained, the motion is denied.

The Eighth Circuit summarized the facts as follows:

> In May 2008, Jana Pinkston, Martin's probation officer, received a report that Martin had weapons on his property. During a home visit and search of Martin's home, Pinkston and several law enforcement officers from the Van Buren County Sheriff's Office located ammunition in Martin's kitchen and in a downstairs air vent, multiple rifles and a handgun in an upstairs air vent, and multiple rifles and a shotgun in a hidden compartment underneath the stairwell. The officers also located a handwritten note that, in addition to describing several of the guns found within the house, contained a description of a mini 14 rifle.

---

[1] Martin's motion was filed by retained counsel. Document #121. Martin moved to file a *pro se* supplement to the motion, which the Court granted, Document #125, and Martin terminated the attorney/client relationship. Document #130. The Court will address the grounds for relief asserted in both the motion and supplemental motion. Martin also asserts new grounds for relief in his reply. Document #144. The Court has considered Martin's arguments in his reply as they relate to the grounds for relief asserted in the motion and supplemental motion but not the new grounds for relief asserted in the reply. *See* Rule 2 of the Rules Governing Section 2255 Proceedings, which requires that the grounds for relief and the facts supporting each ground be stated in the motion.

After learning that the officers had found the weapons in the upstairs air vent, Martin told the officer who sat with him during the search that "they found them." When the officer asked Martin whether they would find anything in the downstairs air vent, Martin indicated that they would find weapons and ammunition, adding, "What can I say? I like guns."

At trial, the jury heard testimony from Mickey Ratcliff and Richard Norwood, Martin's neighbors. Ratcliff testified that in April 2008, while on the road near Martin's house, Ratcliff saw Martin with a rifle in his hand. Norwood testified that Martin's nephew had taken certain weapons from Martin's uncle and brought them to Martin's house. Norwood testified further that he had warned Martin against having the weapons at his house and that Martin's response was that his nephew "was bored and was using them."

The jury also heard testimony from Shannon Applegate, Martin's former girlfriend. Applegate testified that in April 2008 she received a package from Martin containing, among other things, a pistol and a mini 14 rifle with a silver folding stock that Applegate recognized from living with Martin. Applegate testified that the mini 14 rifle in the package had the same characteristics as the mini 14 rifle described in the handwritten note taken from Martin's house.

Id. at **1.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Proving that counsel was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S. Ct. at 2065. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigations are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91, 104 S. Ct. at 2066. Because of the distorting effects of hindsight and the difficulty of viewing counsel's representation of the client from the perspective

available to defense counsel at the time of trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Proving that the deficient performance prejudiced the defense requires showing that there is a reasonable probability that, but for defense counsel's mistakes, the result of the proceeding would have been different. *Id*. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695, 104 S. Ct. at 2068-69. In determining whether there is a reasonable probability that but for counsel's mistakes the result would have been different, the Court must consider the totality of the evidence before the judge or the jury. *Id*. at 695, 104 S. Ct. at 2069.

Martin was represented at trial by Omar F. Greene, II. Martin contends that Greene was ineffective in several respects, primarily in failing to call certain potential witnesses.

The first witness whom Martin says that Greene should have called but did not is Dustin Martin, Edgar's nephew.[2] Edgar has submitted an affidavit from Dustin saying that he had retrieved the firearms at issue from Earl White's[3] residence, where they had been stored, and took them to Edgar's residence while Edgar was absent and that Edgar was unaware that they were in the residence. Document #121-1. Dustin was present when the search was conducted and the firearms

---

[2] When addressing issues related to Dustin Martin, the Court will refer to the defendant by his given name, Edgar, and to his nephew by his given name, Dustin.

[3] Earl White is Edgar's uncle.

3

seized, and he gave a handwritten statement incriminating Edgar.  Document #131-4.[4]  Dustin was later taken into custody in Texas on unrelated charges.  Greene and an investigator traveled to Texas, interviewed Dustin, and determined that Dustin would testify that he had taken the firearms to Edgar's residence while Edgar was not there and that Edgar did not know that they were in the house.  Document #131-5.  Based on that interview, Greene arranged for Dustin to be transported to Little Rock for trial and was prepared to call him at trial.  Before calling Dustin, however, Greene interviewed him again, and Dustin recanted the statement that he had given in Texas.  *Id*.  Dustin told Greene and the investigator that Edgar was also responsible for the firearms being in the residence and knew that they were there; and Dustin said that if he testified that Edgar had no knowledge of the firearms being in the residence, he would be committing perjury.  *Id*.  Faced with a witness who would either incriminate his client or commit perjury, Greene decided not to call Dustin.[5]  *Id*. Greene's decision not to call Dustin was an objectively reasonable decision.  *United States v. Watkins*, 486 F.3d 458, 465 (8th Cir. 2007); *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005); *Williams v. Armontrout*, 912 F.3d 924, 933-34 (8th Cir. 1990).[6]

Martin also contends that Greene was ineffective for failing to call Marilyn Martin and Kimberly Gavit to testify regarding an incident involving Richard Norwood that supposedly occurred while Martin was on bond waiting for trial.  Marilyn Martin and Gavit say that during a

---

[4] Dustin now says that he lied when he made this statement because the police threatened to put him in jail.  *Id*.

[5] Martin contends that the prosecutor threatened to prosecute Dustin for perjury, and that is why Dustin did not want to testify.

[6] In summary, Dustin first gave a statement incriminating Edgar, then recanted that statement and gave a statement exonerating Edgar.  Then he recanted that statement and gave a second statement incriminating Edgar.  Now, he has recanted that statement and, again, has offered a statement exonerating Edgar.

conversation at Martin's house, Martin told the two of them and Norwood that none of his fingerprints would be found on the firearms that had been seized, so he should be acquitted. Document #123 at 54-56 and 59-60.  Then, for some reason, the four of them went to Norwood's house, Norwood entered his house, and then came out with a sawed-off shotgun and pitched it to Martin, who refused to catch it.  *Id.*  After Martin and the two ladies left Norwood's house, Martin explained that Norwood wanted to get his fingerprints on a firearm to ensure that Martin was convicted.  *Id.*  Martin says this testimony should have been adduced to show Norwood's prejudice against him.

Nearly all of this testimony would have been inadmissible hearsay.  Neither Marilyn Martin nor Gavit had personal knowledge of whether Martin's fingerprints were on the firearms.  The obvious purpose of this testimony would have been to put before the jury an out-of-court statement by Martin that his fingerprints were not on the firearms.  Likewise, Martin's statement to them regarding his opinion of Norwood's intent would have been inadmissible as hearsay and as incompetent speculation regarding Norwood's state of mind.  After all of Martin's self-serving hearsay is excluded, what remains is that Norwood once tossed a shotgun to Martin, which hardly would have helped Martin's case.  There was evidence that one of Martin's guns had been stored at Norwood's house.  Document #131-1 at 100 and #131-2 at 59.  Without Martin's self-serving commentary, the testimony that Norwood retrieved a firearm from his house and tossed it to Martin likely would have been viewed by the jury as further evidence that Norwood had stored one of Martin's firearms for a period of time.

Martin also presents affidavits from Marilyn Martin, White, and Brian Wheeler regarding statements that Dustin made to them.  Document #123 at 50-51, 52-53, and 61-62.  All of those statements are hearsay, and none would have been admitted at trial.

Martin also contends that Greene should have called Sandra Gillespie to testify that Martin stayed with her from May 2, 2008, until his arrest on May 6, 2008.[7]  Martin says that Gillespie's testimony would have established that he was not at home and therefore could not have mailed weapons to Applegate, fired weapons, or spoken to Norwood on the day before his arrest.  Applegate testified that she received two firearms from Martin between April 20 and April 30, Document #131-2 at 17-18, so the fact that Martin stayed with Gillespie between May 2 and May 6 would not have contradicted Applegate's testimony.  Furthermore, Norwood testified that he had heard guns being shot at Martin's place two or three weeks before the arrest.  Document #131-1 at 110.  Consequently, even if Gillespie had testified that Martin was staying with her during the period of time from May 2 through May 6, that would not have established that Martin could not have known about the firearms.  The only point of Gillespie's testimony could have been to dispute Norwood's testimony as to the date when he spoke with Martin regarding the guns, and that would not have altered the outcome of the trial.

Martin also contends that Greene was ineffective for failing to introduce the police report regarding the complaint made by Applegate relating to the firearms that were mailed to her; and that Greene was ineffective for failing to show that there were no pictures of the package of firearms, nor were the firearms produced.  An incident reported dated May 21, 2008, from the Poweshiek

---

[7] Martin has not presented an affidavit from Gillespie, but for purposes of this Opinion and Order, the Court assumes that Gillespie would have testified as Martin claims.

County, Iowa Sheriffs Office shows that Applegate complained that Martin had violated a no-contact order between April 16, 2008, and April 30, 2008.  Document #131-3 at 1.  Attached to that report are letters that Martin had written to her during that period of time.  *Id*. at 4-27.  The report includes an incident narrative with the following statements by a deputy sheriff:

> On June 24, 2008, I made another call to Van Buren County SO and making contact with LT. Paul Rice regarding Edgar Martin.  He advised me that Martin was in custody on numerous fire arms violations and pending other charges to include domestic charges against Shannon [Applegate]. He didn't feel at this time additional charges would be any benefit to either agency and further stated Martin is looking at quite a spell in the prison system.  If there is any further contact between Martin and Shannon [Applegate] from the jail we should document it and let them know.
>
> I advised LT. Rice, Shannon [Applegate] had contacted me several weeks ago and informed me she had received some firearms in the mail from Martin.  He stated he would notify the Drug Task Force with my contact info and see if they were interested in the guns.

*Id*. at 2.  Thus, the police report would have confirmed Applegate's testimony that she had reported that Martin had mailed firearms to her.  Introducing this police report would not have altered the outcome of the trial.[8]

As to the fact that the government introduced at trial neither the firearms that had been mailed to Applegate, nor any package nor any picture to confirm Applegate's testimony, those points were brought out by Greene on cross-examination and reiterated during his closing argument.  Document #131-2 at 25 and 95-96.  Greene was not ineffective for the manner in which he addressed Applegate's testimony.

---

[8] Martin's arguments regarding Applegate's testimony are inconsistent.  On the one hand, he says that Dustin mailed the box, but on the other hand, he says that there was no box.  *See* Document #123 at 7.

Martin also contends that Greene was ineffective for failing to use the police report of the search in question to show that the reported gunshots occurred on the morning before the search while Martin was detained at the county jail.  The police report indicates that the officers informed Dustin "that we had information that there were guns in the house this morning."  Document #123 at 77.  Even if there may have been reports of guns being fired on Martin's premises while he was in custody on May 7, that fact would not have changed the outcome of the trial.  As noted, evidence was introduced to show that guns had been fired on Martin's premises on several occasions, including two to three weeks before the date of the search and seizure.  That Martin may have been in jail on one occasion when guns were fired would not prove that he was never there when guns were fired.

Martin also criticizes Green's cross-examination of Mickey Ratcliff.  Although Martin apparently believes that Greene should have done more to establish Ratcliff's prejudice against him, Greene cross-examined Ratcliff regarding his animosity toward Martin.  Document #131-1 at 116-18.  Greene's cross-examination of Ratcliff was not deficient, nor has Martin presented any additional evidence that, if used during cross-examination, likely would have altered the outcome of the case.

Finally, Martin has presented affidavits claiming that Greene had a "nervous breakdown" or some unusual emotional reaction in the breakroom during a trial recess.  Document #123 at 51, 53, 57.  Whatever may have happened in a breakroom is irrelevant unless there is some evidence that the incident affected Greene's performance in the courtroom.  Martin points to no portion of the trial in which Greene's performance was effected by this alleged incident.  Greene never lost his

composure in the courtroom, nor did he exhibit any unusual emotions in the courtroom.  To the contrary, he was always composed, professional, and focused on his job of representing Martin.

As noted, Martin also contends that the prosecutor, Stephanie Mazzanti, engaged in misconduct.  One of his allegations is that Mazzanti misled the Court when she said that "Mr. Martin" mailed firearms to Applegate, which left the impression that she was talking about Edgar, when in fact (Edgar claims) Dustin mailed the firearms.  That allegation of prosecutorial misconduct is just silly.  It was clear that Mazzanti was referring to Edgar, not Dustin, and the evidence was that Edgar, not Dustin, mailed the firearms to Applegate.  Document #123 at 70.

Martin also says that at a bench conference the Court neglected to turn off the microphone, so the jury heard a conversation in which Martin's criminal history was discussed.  Martin is mistaken.  The bench conferences were conducted next to a wall on the side of the courtroom farthest from the jury and away from the microphones.  At the conclusion of one of those bench conferences, the Court reminded an Assistant United States attorney that she and her case agent should turn off the microphones when they converse, referencing the microphones on counsel table.  Document #131-1 at 94.  The jury did not hear a discussion of Martin's criminal history.

Martin also raises a litany of allegations of supposed prosecutorial misconduct, none of which have any merit.  For the most part, these claims are unsupported allegations that the witnesses against Martin lied and that the prosecutor knew that they were lying.  These allegations presuppose that Martin's version of the facts is true and that the prosecutor knew it.  None of Martin's claims of prosecutorial misconduct have merit.

**CONCLUSION**

Edgar Martin's motion and supplemental motion for habeas relief pursuant to 28 U.S.C. § 2255 are without merit.  The motion and supplemental motion are therefore DENIED.  All pending motions are DENIED.  Because Martin has not made a substantial showing that he was denied a constitutional right, no certificate of appealability will be issued.

IT IS SO ORDERED this 27th day of June, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE